THE JOHN DEERE PLOW COMPANY v. W. W. WYLAND *et al.*

No. 13,436. (76 Pac. 863.)

THE JOHN DEERE PLOW COMPANY v. B. F. SPATZ.

No. 13,513. (76 Pac. 863.)

| 69 | 255 |
|----|-----|
| 71 | 874 |
| 69 | 255 |
| f74 | 676 |
| 74 | 678 |
| 69 | 255 |
| f76 | 332 |
| 69 | 255 |
| s78 | 787 |
| e80 | 119 |
| 80 | 120 |

SYLLABUS BY THE COURT.

1. FOREIGN CORPORATIONS — *Single Transaction May Constitute a Doing of Business.* A single transaction by a foreign corporation may constitute a doing of business in this state within the meaning of section 1283, General Statutes of 1901, making certain requirements of foreign corporations doing business in the state, where such transaction is a part of the ordinary business of the corporation, and indicates a purpose to carry on a substantial part of its dealings here.

2. ——— *Certain Corporations Held Not Exempt.* It was not the legislative intent that foreign corporations maintaining resident agents in this state through whom orders for the purchase of goods are solicited, and to whom such goods are sent for delivery to the buyers, should be exempt from the requirements provided by such section.

3. ——— *Requirements Held Not in Violation of Federal Constitution.* That part of said section which provides that no foreign corporation doing business in this state shall maintain an action in any of the courts thereof without first filing certain statements with the secretary of state is not violative of the commerce clause of the federal constitution, even when applied to corporations engaged solely in interstate commerce.

Error from Jewell district court; R. M. PICKLER, judge. Opinion filed May 7, 1904. Affirmed.

*Boyle, Guthrie, Hurt & Davidson,* and *E. P. Hotchkiss,* for plaintiff in error; *W. F. Guthrie,* of counsel.

*R. C. Postlethwaite, B. A. Mason,* and *Burnham & Dashiell,* for defendants in error.

The opinion of the court was delivered by

MASON, J.: These cases are submitted together and involve the same questions. In each the John Deere Plow Company, a foreign corporation, sued in the

district court upon a note ; a defense was interposed by answer, based upon the law relating to foreign corporations, and especially upon section 1283 of the General Statutes of 1901, which forbids any corporation doing business in the state to maintain an action in any of the courts thereof without first filing certain statements with the secretary of state ; a reply admitted non-compliance with the statute, but set out matters claimed to exempt plaintiff from its operation, and judgment was rendered for the defendant upon the pleadings. The plaintiff asks the reversal of the judgments upon these grounds : (1) That in each case the pleadings disclose but one transaction, and that this does not constitute the doing of business within the meaning of the act; (2) that the only business engaged in by the corporation was the sale of merchandise from a point outside the state to buyers within it, and that the statute is not intended to apply in such cases ; or, if so intended, that it is to that extent in contravention of the federal constitution as an attempt to regulate interstate commerce.

The statute requires every foreign corporation seeking to do business in the state to make application to the charter board for permission to do so, which is granted only upon compliance with certain requirements, including the payment of fees. Section 1283, above referred to, reads :

"It shall be the duty of the president and secretary or of the managing officer of each corporation for profit doing business in this state, except banking, insurance and railroad corporations, annually, on or before the 1st day of August, to prepare and deliver to the secretary of state a complete detailed statement of the condition of such corporation on the 30th day of June next preceding. . . . No action shall be maintained or recovery had in any of the courts of this state by any corporation doing business in this state

Deere v. Wyland.

without first obtaining the certificate of the secretary of state that statements provided for in this section have been properly made.''

The reply in each case shows that the note sued upon was given for the purchase-price of machinery sold by plaintiff to defendant, the negotiations for such sale having been made, and the order for such machinery having been taken, by an agent of plaintiff residing in Kansas ; that the order was in writing, made by defendant and delivered to the local agent, by whom it was forwarded to plaintiff at Kansas City, Mo., for acceptance or rejection ; that plaintiff then accepted the order and shipped the machinery to the local agent for delivery to defendant. It is contended by plaintiff in error that as but one transaction is referred to in each case, and as each must be decided solely upon its own record, it cannot be said that it is made to appear that the corporation was engaged in business in this state. It is said in volume 13 of the second edition of the American and English Encyclopedia of Law, at page 869 :

''The doing of a single act of business in the domestic state by a foreign corporation does not constitute the doing or carrying on of business within the meaning of the statutory and constitutional provisions.''

Many decisions are there cited in support of this declaration, to which may be added : *Commercial Bank v. Sherman*, 28 Ore. 573, 43 Pac. 658, 52 Am. St. Rep. 811 ; *Henry v. Simanton*, 64 N. J. E. 572, 54 Atl. 153 ; *Oakland Sugar Mill Co. v. Fred. W. Wolf Co.*, 118 Fed. 239, 55 C. C. A. 93 ; *Florsheim etc. Co. v. Lester*, 60 Ark. 120, 29 S. W. 34, 27 L. R. A. 505, 46 Am. St. Rep. 162 ; *D. & H. Canal Co. v. Mahlenbrook*, 63 N. J. L. 281, 43 Atl. 978, 45 L. R. A. 538. (See, also, 6

17—69 KAN.

Thomp. Corp. § 7936.) For the most part these authorities merely hold that the expression "doing business" is not to be given such a strict and literal construction as to make it apply to any corporate dealing whatever. They turn upon the character, rather than upon the amount, of business done. This is illustrated by the fact that the particular transactions under consideration are frequently described as "independent," "isolated," "occasional," "incidental," "accidental," "casual," "not of a character to indicate a purpose to engage in business within the state," as well as "single." In the decision most frequently cited in this connection, *Cooper Manufacturing Co. v. Ferguson*, 113 U. S. 727, 5 Sup. Ct. 739, 28 L. Ed. 1137, stress is laid upon the circumstance that there was no purpose to do any other business in the state. The controlling principle involved in these cases has already been applied by this court in *Commission Co. v. Haston*, 68 Kan. 749, 75 Pac. 1028. The scope of the rule invoked is stated, and the limitations to which it is subject are suggested, in the third paragraph of the syllabus in that case, which reads:

"Isolated, independent transactions in this state, incidentally necessary to the business of a foreign corporation conducted at its domicile, fully completed before action commenced, will not prevent recovery in the courts of this state by such corporation under section 1283, General Statutes of 1901, when no repetition of such acts is in contemplation and the territory of the state is not being made the basis of operations for the conduct of any part of the corporation's business at the time the suit is begun."

Although the record in each case discloses but one transaction of the corporation, that transaction was not merely incidental or casual; it was a part of the very business for the performance of which the cor-

Deere v. Wyland.

poration existed; it did distinctly indicate a purpose
on the part of the corporation to engage in business
within the state, and to make Kansas a part of its field
of operation, where a substantial part of its ordinary
traffic was to be carried on.   Therefore, although a
single act, it constituted a doing of business in the
state within the meaning of the statute, while several
acts of a different nature might not have had that
effect.   See, in this connection, *Farrior v. New England
Mortgage Security Co.*, 88 Ala. 275, 7 South. 200, and
other Alabama cases cited in *Chattanooga Building &c.
Assn. v. Denson*, 189 U. S. 408, 23 Sup. Ct. 630, 47 L.
Ed. 870.

The contention that the statute in question is not to
be construed as applying to foreign corporations en-.
gaged wholly in interstate commerce finds some sup-
port in the authorities.   See volume 13 of the second
edition of the American and English Encyclopedia' of
Law, page 870, and volume 17, page 106, where it is
said :

"The transaction of the business of interstate com-
merce is not considered as 'doing business in the state'
within the meaning of state statutes regulating foreign
corporations 'doing business within the state.'"

Many of the cases cited in support of this statement,
however, decide merely that provisions imposing con-
ditions upon the conduct of interstate commerce are
unconstitutional.   Such of them as hold that, prop-
erly interpreted, the statutes do not apply to corpora-
tions engaged in interstate commerce reach that
conclusion only by a vigorous application of the prin-
ciple that, if possible, a construction should be adopted
that will avoid interference with the federal constitu-
tion.   (See, also, 17 A. & E. Encycl. of L., 2d ed., 75,
and cases cited.)   Whether or not all parts of the

Kansas statute be valid, we think it was the intention of the legislature that it should reach every continuous exercise of a corporate franchise and should apply in such cases as the present, even conceding that the business of plaintiff was purely interstate commerce. It was so declared in *The State v. Book Co.*, 65 Kan. 847, 69 Pac. 563, where the act was upheld upon the theory that the requirements made of a corporation engaged in such business were not burdens upon it, but measures of protection to the people of the state.

It is not necessary to consider at this time whether the portion of that decision which affirms the constitutionality of the act is consistent with the adjudications of the federal supreme court on the subject. These, with other cases bearing on the matter, are collected, classified and discussed in an exhaustive note on "Corporate Taxation and the Commerce Clause," in *Sandford v. Poe*, 60 L. R. A. 641, 677, 69 Fed. 546, 16 C. C. A. 305, but their effect need not be decided, for no such question is here involved. So far as the present controversy is concerned, it may be admitted that the state has no power to exact any requirements whatever as conditions precedent to the doing of business in this state by a foreign corporation engaged solely in interstate commerce.

The only part of the statute affecting the matter now to be determined is that already quoted in full, which merely provides that no foreign corporation doing business in this state shall maintain an action in any of the courts of the state without furnishing certain information regarding its affairs. The restriction is laid not upon the doing of business, but upon the use of the local courts. In *Haldy v. Tomoor-Haldy Co.*, 4 Ohio Dec. 118, *Bateman v. Western Star Milling*

Deere v. Wyland.

*Co.*, 1 Tex. Civ. App. 90, 20 S. W. 931, and *Woessner v. Cottam & Co.*, 19 Tex. Civ. App. 611, 47 S. W. 678, statutes conditionally denying relief through the courts to foreign corporations engaged in interstate commerce were held to be unconstitutional, but in each of these cases the statute refused a remedy because it was invoked in aid of a right that accrued while the corporation was doing business without having met its requirements, the objection running against the cause of action itself.   Here the corporation is placed under a disability to sue upon any claim whatever so long as it fails to make the statements exacted of it.   It may defend itself when attacked, and may even prosecute proceedings in error in this court to review a judgment rendered against it.   (*Swift & Co. v. Platte*, 68 Kan. 1, 72 Pac. 271.)   Its contracts made during its non-compliance are not held void.   The courts do not take jurisdiction of its controversies and determine them against it because of its past attitude; they merely abate the inquiry until the required statements shall have been made.   (*The State v. Book Co.*, supra; *DeCamp v. Mortgage Co.*, 65 Kan. 860, 70 Pac. 581.)

Although in each of the present cases the defense was made by answer and the judgment was that the defendant recover his costs, the effect is the same as though a formal plea in abatement had been interposed and sustained.   There is no adjudication against the plaintiff further than that it could not at the time maintain an action, and this judgment does not bar a new action whenever the disability shall have been removed.   The case of *Ashley et al. v. Ryan*, 49 Ohio St. 504, 31 N. E. 721, arose upon Ohio statutes authorizing the consolidation of corporations upon stated conditions, including the payment of certain

fees. A foreign corporation engaged in interstate commerce sought to avail itself of the privilege so afforded without complying with the conditions, contending that the exaction of the fees was a burden upon interstate commerce. The court said :

"The power to regulate commerce between the states belongs without doubt to the Congress of the United States; the states cannot interfere with or regulate it in any way. But the duty of the states in respect to such commerce is passive and not active. No state is under any federal obligation to furnish highways, nor to create agencies of any kind, for the purpose of facilitating interstate commerce. The grant of the right to be a corporation is within the sovereign discretion of the state, and cannot be controlled by any other power, state or federal. As it may create or withhold such franchises at its pleasure, it may grant them upon such conditions as best suit its own notions of convenience and policy. Hence the state violates no federal duty toward non-residents, whether corporate or natural persons, in refusing them corporate franchises or in making an exaction for the grant of the same, simply because such persons may have the control of a system of railways used in interstate commerce."

The case was taken to the supreme court of the United States, and in affirming the decision of the state court it was there said :

"The question here is not the power of the state of Ohio to lay a charge on interstate commerce, or to prevent a foreign corporation from engaging in interstate commerce within its confines, but simply the right of the state to determine upon what conditions its laws as to the consolidation of corporations may be availed of." (153 U. S. 436, 14 Sup. Ct. 865, 38 L. Ed. 773.)

In paraphrase of this argument, as applied to the facts of this case, it may be said that the question

here is not the power of the state of Kansas to lay a charge on interstate commerce, or to prevent a foreign corporation from engaging in interstate commerce within its confines, but simply the right of the state to determine upon what conditions its laws as to the enforcement of rights through its courts may be availed of. The part of the statute under consideration lays no embargo or burden upon interstate commerce; it does not seek to prevent or hamper the transactions of corporations engaged in that business; it does not declare their contracts void or deny them the enforcement of any rights whatever; it merely provides that if they wish to make use of the machinery of the state courts for their own benefit they must do so upon the same terms as other corporate suitors. In this we find no interference with the powers reserved to Congress by the federal constitution.

The judgments are affirmed.

All the Justices concurring.